UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/12/2016
```

-------------------------------------------------------------X

In re LEHR CONSTRUCTION CORP.,                    :

                                    Debtor.        :

                                                   :

_____                  :

JONATHAN L. FLAXER, not individually but          :
solely in his capacity as Chapter 11 trustee for Lehr :
Construction Corp.,                               :

                                                   :

                                    Appellant,     :

                                                   :

                        -v-                        :

                                                   :

PETER GIFFORD,                                     :

                                                   :

                                    Appellee.      :

-------------------------------------------------------------X

1:15-cv-4350-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

Appellant Jonathan Flaxer, chapter 11 Trustee (the "Trustee") for Lehr Construction

Corporation ("Lehr"), appeals from the Bankruptcy Court's order granting defendant Peter

Gifford's motion to dismiss the Trustee's faithless servant claim against him on the grounds that it is

barred by the *in pari delicto* doctrine. For the reasons that follow, I AFFIRM the Bankruptcy Court's

decision dismissing the Trustee's claim.

## I.      Background[1]

Lehr was a large construction company that planned, designed, and oversaw interior

construction projects in and around New York City. S.D.N.Y. Bankr. No. 13-01256

Dkt. 1. ("Compl.") ¶¶ 14-28.[2] Lehr competed for construction jobs by submitting bids, and if Lehr

was hired, it, in turn, would hire subcontractors to complete the project. Compl. ¶¶ 15-16. Lehr's

---

[1] The facts included in this section are undisputed, and are limited to those necessary to decide this appeal.
[2] As noted in the parties' briefs, the Trustee filed an amended complaint after Gifford's motion to dismiss was fully
briefed and argued. Appellee's Br. 3 n.1. Because that amendment did not change the allegations against Gifford, and
because the Bankruptcy Court followed the original complaint's paragraph numbering in its decision, I will do the same
for ease of reference.

purchasing department negotiated the costs of construction services with subcontractors, and was responsible for entering into purchase orders with subcontractors. Compl. ¶¶ 20, 38. Gifford worked in the purchasing department, and was supervised by Mark Martino, the head of the department. Compl. ¶¶ 37-38.

Sometime between early 2000 and August 1, 2004, Lehr began purposely including superfluous work on bid packages, so that customers were billed for more construction services than were ultimately performed. Compl. ¶¶ 33, 35-36. Rather than returning money for unperformed work to customers, Jeffrey Lazar, one of Lehr's senior officers, oversaw a scheme in which Lehr and its subcontractors conspired to keep money customers paid for services that were never provided. Compl. ¶ 35. Steven Wasserman, the head of the estimating department, was responsible for ensuring that bid packages contained services, and costs for such services, beyond those actually needed. The purchasing department, headed by Martino, would issue the inflated purchase orders and then negotiate with the subcontractors to agree on the lower, actual cost of the project. Compl. ¶¶ 37-38. The subcontractor would be paid the inflated purchase price, and Martino then maintained records listing those overpaid funds and money "owed" to Lehr by subcontractors. Compl. ¶¶ 39, 42. Lehr would recoup the funds through future bids with the same subcontractors; Martino's department would keep track of the debits and credits between Lehr and the subcontractors. Compl. ¶¶ 41-42.

Gifford, along with two other employees in the purchasing department, participated in the scheme by negotiating with subcontractors to agree upon an actual cost of a bid project as compared to the inflated bid package amount and by keeping track of the credits and debits between Lehr and the co-conspirator subcontractors. Compl. ¶¶ 38, 46.

In early 2010, the Manhattan District Attorney began investigating construction companies, including Lehr. Compl. ¶ 48. After a widely publicized raid at Lehr's office on March 10, 2010, some customers cancelled existing contracts with Lehr and others excluded Lehr from bidding for

future work.  Compl. ¶¶ 50-51, 53.   Lehr filed for protection under Chapter 11 of the Bankruptcy Code in February 2011.  Compl. ¶¶ 54-55.

In May 2011, Lehr—along with several now-former employees—was indicted.  Bankruptcy Court Opinion ("Op.") at 7.  Lehr was convicted on thirteen counts including one count of enterprise corruption, one count of a scheme to defraud, nine counts of grand larceny, and two counts of money laundering in the first degree.  Bankr. Dkt. 15-6.  Lazar was indicted and convicted of a scheme to defraud in the first degree and sentenced to serve a prison term.  Bankr. Dkt. 15-7.  Wasserman was also indicted and convicted of grand larceny in the fourth degree and sentenced to probation.  Bankr. Dkt. 15-8.  Gifford was not indicted or convicted for any criminal activity relating to Lehr's criminal scheme, although he did enter into a cooperation agreement with the Manhattan District Attorney's Office.  Compl. ¶ 61.

In February 2013, the Trustee filed the complaint seeking to recover "all sums paid to or on behalf of Gifford as compensation" as well as "legal fees" associated with the criminal investigation because Gifford was a "faithless servant." Compl. ¶ 68. [3]   Gifford moved to dismiss the complaint, arguing (1) that Lehr had waived its claim against him because an employee is not disloyal when his employer knows of and tolerates his conduct, and (2) that the claim was barred by the *in pari delicto* doctrine.  Bankr. Dkt. 15-10.  The Bankruptcy Court dismissed the Trustee's claim based on the *in pari delicto* doctrine, *Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 528 B.R. 598 (Bankr. S.D.N.Y. 2015), and this appeal followed.

## II.    Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.  *In re Bayshore Wine Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000).  Because

---

[3] The complaint named multiple defendants, and the Trustee has since settled all claims except the faithless servant claim against Gifford, see Appellant's Br. at 1 n.2.

this is an appeal from a decision on a motion to dismiss, only conclusions of law are at issue and my review is *de novo*.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6).[4]  *In re Thelen LLB*, 736 F.3d 213, 218 (2d Cir. 2013).  When deciding a motion to dismiss, a court accepts "all factual allegations in the complaint as true and draw[s] all reasonable inferences in plaintiff's favor."  *In re Thelen*, 736 F.3d at 218 (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  "To survive a Rule 12(c) motion . . . [a] 'complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  *Id.* at 218-19 (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).  The *in pari delicto* doctrine may be applied at the pleadings stage where the outcome is plain on the face of the pleadings.  *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 65 (2d Cir. 2013) (citing *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 459 n.3 (2010)).

In considering Gifford's motion, the Bankruptcy Court took judicial notice of several documents related to the outcome of the criminal proceedings involving Lehr, Lazar, and Wasserman.  Op. at 10-11; *see* Bankr. Dkt. No. 15-1.  On appeal, "matters judicially noticed by the District Court are not considered matters outside the pleadings."  *In re Thelen*, 736 F.3d at 219 (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008)).  Accordingly, I will consider here the facts of which the Bankruptcy Court took judicial notice.

## III.   Discussion

### A.   Faithless Servant Doctrine

"Under New York law, an agent is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'"  *Phansalkar v. Andersen Weinroth*

---

[4] Federal Rule of Civil Procedure 12(c) applies in adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7012(b).

*& Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (quoting *Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (N.Y. 1977) (internal quotation marks omitted)).  "A faithless servant forfeits all compensation earned during the period of his disloyalty even if his services benefitted the principal in some part." *Tyco Intern., Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 562 (S.D.N.Y. 2010) (citing *Phansalkar*, 344 F.3d at 208).

"New York courts have used two different standards to determine whether an employee's misbehavior warrants forfeiture." *Phansalkar*, 344 F.3d at 201.  The first, and more stringent, standard—the *Turner* standard—requires "substantial" disloyalty on the part of the employee. *Phansalkar*, 344 F.3d at 201 (citing *Turner v. Kouwenhoven*, 100 N.Y. 115, 119 (1885)).  Where the disloyalty consists of a single act or where the employer knew of and tolerated the behavior, courts have found the disloyalty not to be "substantial."  *Id.* at 202 (citing *Bravin v. Fashion Week, Inc.*, 73 Misc. 2d 974 (1973) (finding no substantial violation of contract of service where employer continued employment of a person who was allegedly insubordinate)).  The second standard, first suggested in *Murray v. Beard*, 102 N.Y. 505, 508 (1886), and confirmed by the New York Court of Appeals in *Lamdin v. Broadway Surface Advertising Corp.*, requires only "a breach of a duty of loyalty or good faith," without inquiring into the severity of the breach.  *Id.* (citing *Lamdin*, 272 N.Y. 133, 138 (1936)).

The tension between these two standards—whether any breach of a duty of loyalty or good faith warrants forfeiture, or whether such a breach must constitute "substantial" disloyalty—has not been resolved.  *See Phansalkar*, 344 F.3d at 202.  Because, as explained below, I uphold the Bankruptcy Court's ruling that the Trustee's claim against Lehr is barred by the *in pari delicto* doctrine, I need not decide which standard applies here.

**B.     *In Pari Delicto***

"The doctrine of in pari delicto mandates that the courts will not intercede to resolve a dispute between two wrongdoers." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 464 (N.Y. 2010).  The

doctrine serves two public policy purposes.  "First, denying judicial relief to an admitted wrongdoer deters illegality.  Second, *in pari delicto* avoids entangling courts in disputes between wrongdoers."  *Id.*

> [N]o court should be required to serve as paymaster of the wages of crime, or referee between thieves.  Therefore, the law will not extend its aid to either of the parties or listen to their complaints against each other, but will leave them where their own acts have placed them.

*Id.*  (quoting *Stone v. Freeman*, 298 NY 268, 271 (1948)).

"The doctrine of *in pari delicto* bars a party that has been injured as a result of its own intentional wrongdoing from recovering for those injuries from another party whose equal or lesser fault contributed to the loss."  *Rosenbach v. Diversified Group, Inc.*, 85 A.D.3d 569, 570 (N.Y. App. Div. 2011).  "The defense requires intentional conduct on the part of the plaintiff or its agents."  *Sacher v. Beacon Assocs. Mgmt. Corp.*, 980 N.Y.S.2d 121, 124 (N.Y. App. Div. 2014) (citing *Kirschner*, 15 N.Y.3d at 474).

"Traditional agency principles play an important role in an in pari delicto analysis . . . namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principles."  *Kirschner*, 15 N.Y.3d at 465 (citing *Henry v. Allen*, 151 NY 1, 9 (1896)).  Imputation is presumed "even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud."  *Id.* (citing *Price v. Keyes*, 62 N.Y. 378, 384-85 (1875)).  "Like a natural person, a corporation must bear the consequences when it commits fraud."  *Id.* (citing *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86-87 (2d Cir. 2000)).  The presumption of imputation "fosters an incentive for a principal to select honest agents and delegate duties with care."  *Id.* at 466.

There is a narrow exception to the presumption of imputation, the adverse interest exception, which is not at issue here.[5]  *See Kirschner*, 15 N.Y.3d at 466.  The adverse interest exception applies only when the agent has "*totally abandoned* his principal's interests" and is "acting

---

[5] *See* Appellant's Reply Br. 8 (stating that the Trustee is not invoking the adverse interest or innocent insider exception).

*entirely* for his own or another's purposes," but does not apply where there is a benefit to both the employee and the corporation. *Id.* at 466 (citing *Center v. Hampton Affiliates*, 66 N.Y.2d 782, 784-85 (1985)).

The Bankruptcy Court described an additional exception to the presumption of imputation, which I do not believe is supported by New York law. The Bankruptcy Court held that "corporate insiders cannot rely on the *in pari delicto* defense" because their acts are not properly imputed to the corporation, citing to a number of federal district court and bankruptcy court decisions. Op. at 15. I will refer to this as "the bankruptcy insider's exception"—described in certain bankruptcy cases to preserve a bankruptcy trustee's ability to sue the debtor's insiders, despite the fact that their wrongdoing is imputed to the bankrupt corporation. *See Teras Int'l Corp. v. Gimbel*, No. 13-cv-6788-VEC, 2014 WL 7177972, at *10 (S.D.N.Y. Dec. 17, 2014) ("Claims against insiders for their acts as corporate fiduciaries are not barred by *in pari delicto*, because it would be absurd to allow a wrongdoing insider to rely on the imputation of his own conduct to the corporation as a defense.") (internal quotations marks and citation omitted).

I do not see a foundation for the "insider" exception to imputation for purposes of the *in pari delicto* defense as it exists *under New York law*. In *Kirschner*, the Court of Appeals sought to "remove any lingering confusion" regarding "the principles of in pari delicto and imputation, with its narrow adverse interest exception . . . ." *Kirschner*, 15 N.Y.3d at 477. *Kirschner* also included a clear warning regarding the distinction between the federal *Wagoner* doctrine and New York's *in pari delicto* defense. *Id.* at 459 n.3. I linger on the point here because I am concerned that the Bankruptcy Court's description of an additional exception to imputation under New York law signals a resurgence of the confusion that *Kirschner* sought to eliminate. As described below, I think that any "insider exception" arises under the *Wagoner* doctrine, not the imputation rules applicable to the *in pari delicto* defense under New York law.

First, I note that the *in pari delicto* defense exists as a matter of federal common law, as well as under the laws of the various states.  This decision involves the application of New York's law regarding *in pari delicto*.  New York's version of the *in pari delicto* defense is not the same as that of all other jurisdictions.  The Court of Appeals made that point quite clear in *Kirschner*, when it rejected proposals to "water down" New York's *in pari delicto* doctrine by making it more consistent with the defense as it existed in New Jersey and Pennsylvania.  *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 470-477 (2010).  *In pari delicto* is not a restatement principle, to be applied as if it existed uniformly in all jurisdictions.  Here, I apply New York law.

As articulated by the Court of Appeals in *Kirschner*, the presumption of imputation under New York law, "governs in every case, except where the corporation is actually the agent's intended victim . . . ."  *Kirschner*, 15 N.Y.3d at 466.  New York law reserves only one exception to the broad presumption of imputation—the adverse interest exception described above—"this most narrow of exceptions."  *Id.*  In *Kirschner*, the Court of Appeals wrote "because the [adverse interest] exception requires adversity, it cannot apply unless the scheme that benefited the insider operated at the corporation's expense."  *Id.* at 467.  The Court of Appeals rejected the proposition that the acts of an insider would be exempted from imputation in situations where the adverse interest exception did not apply.  *See id.* ("[T]his rule avoids ambiguity where there is a benefit to both the insider and the corporation . . . .").  Thus, under New York law, the acts of insiders are imputed to the corporation unless the adverse interest exception applies.  *Kirschner* does not support the Bankruptcy Court's conclusion that New York law provides for a broad "insider" exception to the presumption of imputation.

What, then, is the source of the insider exception described by the Bankruptcy Court?  As noted above, the Bankruptcy Court cited to a series of federal and federal bankruptcy court cases as support for its holding on that point.  Op. at 15.  The special master's decision for *In re Refco Inc. Sec. Litig.,* 2010 WL 6549830 (S.D.N.Y. Dec. 6, 2010), *aff'd in part*, 779 F. Supp. 2d 372 (S.D.N.Y. 2011),

seems to have been particularly influential; it was cited directly by the Bankruptcy Court, and many of the other cases relied on by the Bankruptcy Court cited to it in turn.

I believe that the special master's opinion in *In re Refco* is written in a way that makes it easy for cases relying on that decision to conflate the federal *Wagoner* doctrine with New York state law. The Second Circuit's *Wagoner* rule, established in *Shearson Lehman Hutton v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991), is a prudential limitation on standing under federal bankruptcy law. The *Wagoner* rule provides that that trustees do "not have standing to seek recovery from third parties where corporate insiders engaged in the wrongdoing that caused the damages." *In re Refco*, 2010 WL 6549830, at *3. Rather, "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation." *Wagoner*, 944 F.2d at 120.[6]

The special master *In Re Refco* treated New York *in pari delicto* doctrine and *Wagoner* as substantively identical for purposes of his report and recommendation. *In re Refco*, 2010 WL 6549830, at *6. He recognized that the New York Court of Appeals had stated expressly that the *Wagoner* doctrine was not the same as the state law defense of *in pari delicto*, but concluded that "[w]hile the New York court's analysis may suggest some conceptual divergence between *Wagoner* and the *in pari delicto* doctrine, there is no in fact difference as a practical matter *as applied in these cases*." *Id.* (emphasis added). The special master observed that in *Kirschner v. KPMG LLP*, 626 F.3d 673 (2d. Cir. 2010), the Second Circuit had applied the Court of Appeals' rulings on New York law in *Kirschner* without reservation with respect to the *Wagoner*. *Id.* The special master also noted that the Second Circuit did not "even remark about the New York Court of Appeals' conceptual differentiation of *in pari delicto* and *Wagoner*." *Id.* Having concluded that the analysis of *Wagoner* and *in pari delicto* was substantively the same in that particular case, the special master proceeded to

---

[6] As the Bankruptcy Court noted, this case does not present the typical fact pattern in which the *Wagoner* rule is typically invoked, Op. 18 n.5, and the parties have not argued that it applies here.

9

discuss what he termed "*in pari delicto/Wagoner*" as an undifferentiated aggregate concept throughout the decision.

Nearly all of the cases cited by the Bankruptcy Court's in support of its conclusion that an "insider" exception to imputation exists under New York law, rely ultimately on *In Re Refco*. What *In Re Refco*, actually states, however, is that

> The *Wagoner* doctrine is inapplicable to claims by or on behalf of the corporation against insiders for damages caused by their misconduct as corporate insiders. The reasoning is that it would be absurd to allow a wrongdoing insider to rely on the imputation of his own conduct to the corporation as a defense. None of the Defendants disagree with the basic proposition that claims against insiders for their acts as corporate fiduciaries are not barred by *in pari delicto/Wagoner*. . . . The case law does not support the broad proposition that every breach of fiduciary claim escapes *in pari delicto/Wagoner*. Such a broad rule would be inconsistent with the rationale for imputation—which is that the corporation is responsible for the acts of its agents. . . . That is why the case law is narrower—it provides that *in pari delicto/Wagoner* does not apply to the actions of fiduciaries who are insiders in the sense that they either are on the board or in management, or in some other way control the corporation.

*In Re Refco* at *11.

From this extensive quotation, it is apparent that the "insider" exception discussed by the special master was first framed as an exception to the *Wagoner* doctrine—the special master states that "it would be absurd to allow a wrongdoing insider to rely on the imputation of his own conduct" to explain the insider exception to the *Wagoner* rule, not an exception to imputation under New York law for purposes of the *in pari delicto* defense. "[T]he *Wagoner* rule is not part of New York law except as it reflects the in pari delicto principle," *Kirschner*, 15 N.Y.3d at 459 n.3, but because *In Re Refco* analyzed both concepts collectively ("*in pari delicto/Wagoner*"), the decision has been cited for the proposition that an "insider" exception also exists for purposes of imputation under New York law in addition to the adverse interest exception. I do not believe that the cases cited by *In Re Refco* support that broad conclusion.[7]

---

[7] The discussion in *In Re Refco*, involved a discussion of the availability of *in pari delicto* in the context of claims for breach of fiduciary duty against insiders on behalf of a corporation. That nuance has been lost in many cases citing to *In Re*

While federal courts may refer to the *in pari delicto* principle to guide our analysis of the *Wagoner* doctrine, I do not think that it is a two-way ratchet. Federal courts cannot "water down" the clear imputation rules established under New York law in *Kirschner* by reference to *Wagoner*, on the assumption that the doctrines are substantively the same for all purposes.

I am not taking the position that *In Re Refco* was wrongly decided. The special master's decision—in the context of his report and recommendation—to treat *Wagoner* and *in pari delicto* as substantive equivalents, and his resulting use of the aggregated term "*in pari delicto/Wagoner*" made perfect sense in the context of that specific decision. But the decision should not be read to support the proposition that the two doctrines are substantively identical under all circumstances. In my view, the special master's report, as affirmed in part by the District Court, does not provide a foundation for the Bankruptcy Court's holding that a broad insider exception to imputation, and, thus, *in pari delicto*, exists under New York law. To understand the exceptions to imputation under New York law, I look instead to the Court of Appeals decision in *Kirschner*, which provides only for the adverse interest exception.

## C.     Application of *In Pari Delicto* Defense to the Trustee's Faithless Servant Claim

As discussed above, "[t]he traditional principle that a corporation is liable for the acts of its agents and employees applies with full force to the *in pari delicto* analysis." *In re MF Global Holdings Ltd. Inv. Litig.*, 998 F.Supp.2d 157, 189 (S.D.N.Y. 2014) (citing *Kirschner*, 15 N.Y.S.3d at 464-66).

The Trustee argues (1) that *in pari delicto* cannot, and should not be, permitted as a defense to faithless servant claims, and (2) that even if *in pari delicto* can apply to faithless servant claims it does not apply to Gifford because he is an insider.

---

*Refco* as establishing a broad exception to *in pari delicto*. This case does not involve a claim for breach of fiduciary duty by the corporation against Mr. Gifford.

The first argument is foreclosed by New York case law.  As the Court of Appeals stated, *in pari delicto* "applies even in difficult cases and should not be 'weakened by exceptions.'"  *Kirschner*, 15 N.Y.3d at 464 (citing *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 470 (1960)).  New York courts have not recognized an exception for faithless servant claims.  Indeed, the Appellate Division, on facts quite similar to this case, recently upheld the Supreme Court's ruling that *in pari delicto* barred a faithless servant claim.  *Teneyck, Inc. v. Rosenberg*, 957 N.Y.S.2d 845 (N.Y. Sup. Ct.), *aff'd*, 975 N.Y.S.2d 335 (N.Y. App. Div. 2013).  There, as here, the plaintiff corporation had been convicted for the criminal scheme that formed the basis of its faithless servant claim.  *Id.* at 847.  Unlike Gifford, in *Teneyck* the defendant-employee had also been convicted for his conduct in the criminal scheme; in fact, the corporation and defendant pleaded guilty to identical charges.  *Id.*  The Appellate Division held that where the parties were guilty of misconduct stemming from the same criminal scheme the action was barred by *in pari delicto*.  975 N.Y.S.2d 335.

The Trustee can cite no case supporting his assertion that *in pari delicto* cannot bar faithless servant claims.  Neither of the cases the Trustee relies upon, *Sansum v. Fioratti*, 8 N.Y.S.3d 311 (N.Y. App. Div. 2015) and *Mosionzhnik v. Chowaiki*, 972 N.Y.S.2d 814 (N.Y. Sup. Ct. 2013), are to the contrary.

In his brief, the Trustee cites *Sansum* for the general proposition that *in pari delicto* is inapplicable in faithless servant claims, but, as he admitted at oral argument, this is an overstatement. In *Sansum*, an employee who had embezzled funds from his former employer sued the former employer for breaches of fiduciary duty, and the employer counter-claimed under the faithless servant doctrine.  8 N.Y.S.3d 311, 313 (N.Y. App. Div. 2015).  The Appellate Division held that the employer was entitled to summary judgment on its faithless servant claim, notwithstanding the employee's argument that the employer had originally obtained the (later embezzled) funds unlawfully and so its claims were barred by *in pari delicto*.  *Id.*  This makes sense because the employer was not an "active, voluntary participant in the unlawful activity"—the embezzlement—that was at

issue in its faithless servant claim.  The facts of *Sansum* did not justify the application of *in pari delicto*, but the decision does not support the broad proposition that *in pari delicto* never applies to any faithless servant claim as the Trustee maintains.

The Trustee also relies on *Mosionzhnik v. Chowaiki* in support of his argument, but misreads the case.  *Mosionzhnik* involved a former employee of an art gallery, who had committed various bad acts, including stealing money from the gallery and using clients' art as collateral for loans without the clients' consent.  972 N.Y.S.2d 814, 826 (N.Y. Sup. Ct. 2013).  The Court determined that Ms. Mosionzhnik had to return the $500,000 she had stolen to the gallery, but that "[r]ecovery on the remaining improprieties . . . is barred by the doctrine of *in pari delicto*" because her bad acts that benefited the gallery were imputed to the gallery.  *Id.* at 830.  As the Trustee stresses, the Court also determined that Mosionzhnik could not claim any additional compensation from the gallery.  *Id.* Again, this particular case in no way renders *in pari delicto* categorically inapplicable to faithless servant claims; Mosionzhnik, unlike Gifford, had harmed the company by stealing money from it, providing a separate basis for forfeiting compensation that was not imputed to the gallery.

Considered together, *Teneyck*, *Sansum*, and *Mosionzhnik* demonstrate that *in pari delicto* can apply to faithless servant claims; courts must consider the individual facts of each case to determine whether it does apply.  Here, as in *Teneyck*, the *in pari delicto* doctrine bars the faithless servant claim. Lehr is a wrongdoer that was ultimately convicted for the unlawful activity that is the subject of the Trustee's faithless servant claim, and Lehr was more culpable than Gifford—Gifford was only one of at least half a dozen Lehr employees involved, and the others included two department heads, Wasserman and Martino (Gifford's supervisor), and Lazar, a senior executive, all of whose conduct is imputed to Lehr.

Lacking support in case law for his position, the Trustee resorts to public policy arguments. Appellant's Br. 10-11, 18-20.  But the Trustee does not represent the public; he stands in the shoes of the debtor, a wrongdoer.  Moreover, it is not true, as the Trustee claims, that the application of *in*

*pari delicto* to faithless servant claims will eliminate the faithless servant doctrine.  Corporations will still be able to recover against the prototypical faithless servant—the employee who steals from the company for his own benefit—because that employee's conduct will not be imputed to the corporation.  *Kirschner*, 15 N.Y.3d at 466-67.  Moreover, the Court's conclusion today does not compel the conclusion that a corporation will *never* be able to withhold or recover compensation from an employee whose bad acts benefit both the employee and corporation.  As *Mosionzhnik* demonstrates, even where some of an employee's misconduct benefits a corporation, if the employee is also simultaneously acting against the corporation's interests the corporation will have a claim.  But here there is no allegation that the interests advanced by the employee's misconduct were ever unaligned with those of the corporation.  As a result, his conduct is imputed to the corporation and the *in pari delicto* defense applies.

Having determined that the *in pari delicto* doctrine is applicable, I next consider the Trustee's argument that the "bankruptcy insider exception" prevents the doctrine from applying to Gifford.  As discussed in depth above, it is not clear to me that bankruptcy law can or does create a special "bankruptcy" exception to the New York state law.  Nonetheless, for the sake of completeness, I evaluate the argument assuming that such an exception exists.[8]  Because this exception, as framed in the cases cited by the Trustee is limited "to the actions of fiduciaries who are insiders in the sense that they either are on the board or in management, or in some other way control the corporation," I conclude that any such exception would not apply.  *Teras Int'l Corp.*, 2014 WL at *10 (quoting *In re Optimal U.S. Litig.*, 813 F.Supp.2d 383, 400 (S.D.N.Y. 2011).  Gifford was not an officer or director, nor did he exert control over Lehr such that he could be considered an insider.[9]

---

[8] Alternatively, if Mr. Gifford had framed his argument as an argument that the Trustee lacked standing under the *Wagoner* rule this analysis would apply.

[9] The Bankruptcy Court noted that two recent New York state court decisions— *Mosionzhnik* and *Teneyck*—allowed defendants, who were clearly insiders, to utilize the *in pari delicto* defense.  Op. 16 n.4.  This is consistent with my conclusion that there is no broad insider exception to imputation under New York state law.

The Trustee tries to circumvent this roadblock by asserting that all employees of a corporation are "insiders" for the purposes of *in pari delicto* analysis and so all come within the "bankruptcy insider exception." The Trustee's position, as articulated at oral argument, that "a corporate insider" is any employee of a corporation because all employees are insider the corporation is frivolous. He seeks precedential support for this assertion by misreading the Court of Appeals statement in *Kirschner* that:

> A corporate insider's personal interests—as an officer, employee, or shareholder of the company—are often deliberately aligned with the corporation's interests by way of, for example, stock options or bonuses, the value of which depends on the corporation's financial performance.

15 N.Y.3d at 467. The Trustee argues that this statement demonstrates that the Court of Appeals considers every employee—and presumably every shareholder—of a company to be an insider for the purposes of analyzing the bankruptcy insider exception to *in pari delicto*. I disagree. The only reasonable reading of this sentence is as a simple acknowledgement that a CEO or CFO, for example, who may well be an officer, and employee, and a shareholder of their company, will have a personal stake in the company's financial success. If courts were to adopt the Trustee's theory, *in pari delicto* could never apply to situations in which an employee's fraud on behalf of a corporation leads to bankruptcy, a result clearly contrary to the Court of Appeals' holding in *Kirschner*. *Id.* at 464-466.

Finally, the Trustee's contention is not supported by the cases he cites. *See Teras Int'l Corp.*, 2014 WL at *10 (two defendants who were corporate directors were insiders, three directors who were not directors and did not control corporation were not); *In re Granite Partners, L.P.*, 194 B.R. 318, 331 (Bankr. S.D.N.Y. 1996) (insider was corporation's sole decision maker, sole general partner, and only person acting on corporation's behalf); *Kirschner*, 15 N.Y.3d at 458 (categorizing corporation's president, CEO, and "other owners and senior management" as insiders).

Because Gifford was not an insider the "bankruptcy insider exception" does not apply, and I affirm the Bankruptcy Court's ruling that the Trustee's claim against Gifford in barred by *in pari delicto*.

### D.  Leave to Amend

The Trustee asks that the Court grant leave to amend the complaint, in the event that the Court finds that the *in pari delicto* doctrine applies, so that he may re-plead.[10]  Although a district court "should freely give leave" to amend "when justice so requires," Federal Rule of Civil Procedure 15(a)(2), it has "discretion to deny leave for good reason, including futility . . . ." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Lehr was convicted of thirteen counts of criminal activity, including enterprise corruption, a scheme to defraud, grand larceny in the second degree, and money laundering in the first degree.  Bankr. Dkt. No. 15-6.  Because Lehr participated in and was at the very least Gifford's equal in fault, any amendment would be futile, and leave to amend the complaint is denied.

## IV.   Conclusion

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED.  The Clerk of Court is instructed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated:  January 12, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[10] The Trustee argues that he can add allegations that Lehr's owners and most senior executives were unaware of the criminal scheme, and had they known would have put a stop to it.  Setting aside the fact that this argument contradicts all of the Trustee's arguments regarding imputation, it is also foreclosed by *Kirschner*.  15 N.Y.3d at 466 ("Where the agent is defrauding someone else on the corporation's behalf, the presumption of full communication [between agents and principals] remains in full force and effect.").